```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF WASHINGTON

TERESA WILLARD,                  )
                                 ) No. CV-04-360-CI
          Plaintiff,             )
                                 ) ORDER DENYING PLAINTIFF'S
v.                               ) MOTION FOR SUMMARY JUDGMENT
                                 ) AND DIRECTING ENTRY OF
JO ANNE B. BARNHART,             ) JUDGMENT FOR DEFENDANT
Commissioner of Social           )
Security,                        )
                                 )
          Defendant.             )
                                 )
```

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 12, 15), submitted for disposition without oral argument on June 20, 2005. Attorney Jeffrey Schwab represents Plaintiff; Special Assistant United States Attorney David M. Blume represents Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 6.) After reviewing the administrative record and the briefs filed by the parties, the court **DENIES** Plaintiff's Motion for Summary Judgment and directs entry of judgment in favor of Defendant.

Plaintiff, who was 30-years-old at the time of the administrative decision, filed applications for Social Security disability and Supplemental Security Income (SSI) benefits on April 24, 2002, alleging an onset date September 14, 2001, due to Meniere's Syndrome and hearing loss. (Tr. at 47.) Plaintiff had a

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 1

high school education and past work experience as an assembler, cashier, and housekeeper. (Tr. at 60.) Following a denial of benefits and reconsideration, a hearing was held before Administrative Law Judge (ALJ) R. J. Payne. The ALJ denied benefits; review was denied by the Appeals Council. This appeal followed. Jurisdiction is appropriate pursuant to 42 U.S.C. § 405(g).

**ADMINISTRATIVE DECISION**

The ALJ concluded Plaintiff had not engaged in substantial gainful activity and that her date of last insured was December 31, 2006. (Tr. at 15.) Plaintiff had severe impairments, including Meniere's disease and endometriosis, but those impairments were not found to meet the Listings. Plaintiff's testimony was not found credible as to disability. (Tr. at 18.) The ALJ determined Plaintiff's residual capacity permitted her to perform her past relevant work as a hotel/housekeeper or alternatively at step five, under the Grids, she was not disabled.

**ISSUES**

The question presented is whether there was substantial evidence to support the ALJ's decision denying benefits and, if so, whether that decision was based on proper legal standards. Plaintiff asserts the ALJ erred when he (1) improperly concluded Plaintiff did not meet the Listings, which Plaintiff contends are vague as to the required frequency of Meniere attacks; (2) impermissibly relied on the testimony of the medical expert; and (3) failed to order a psychological examination.

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the

court set out the standard of review:

> The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

**SEQUENTIAL PROCESS**

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.
>
> In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential

inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

**ANALYSIS**

1.  Listed Impairment and Medical Expert

Plaintiff contends the Listing for Meniere's is impermissibly vague as to the frequency of attacks that would constitute a listed impairment. Plaintiff further proposes the term "frequent" as used in the Listing means that the balance disturbance attacks occur frequently enough to preclude substantial gainful activity. Defendant agrees this is a proper interpretation of the term, see prelude to Listing 2.00(B)(2),[1] but argues the medical evidence does not support such a finding.

In his opinion, the ALJ noted, although Plaintiff suffers from severe Meniere's disease, that impairment does not meet the Listings. (Tr. at 17.) His conclusion was based on the testimony of the medical expert, Dr. Robert Nielsen, who testified at the

---

[1]That provision states:

*Vertigo associated with disturbances of labyrinthine-vestibular function, including Meniere's disease.* These disturbances of balance are characterized by an hallucination of motion or loss of position sense and a sensation of dizziness which may be constant or may occur in paroxysmal attacks. Nausea, vomiting, ataxia, and incapacitation are frequently observed, particularly during the acute attack. It is important to differentiate the report of rotary vertigo from that of "dizziness" which is described as lightheadedness, unsteadiness, confusion, or syncope.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 4

administrative hearing after Plaintiff stated the frequency of her vertigo attacks had increased to three to four times a week, six weeks prior to the hearing. Prior to that time, Dr. Nielsen noted her attacks had been one to two times a month, occasionally three. (Tr. at 371.)

The opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester*, at 831, citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990). Cases have upheld rejection of an examining or treating physician based in part on the testimony of a non-examining medical advisor; but those opinions have also included reasons to reject the opinions of examining and treating physicians that were independent of the non-examining doctor's opinion. *Lester*, at 831, citing *Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion); *Andrews*, 53 F.3d at 1043 (conflict with opinions of five non-examining mental health professionals, testimony of claimant and medical reports); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician, but also substantial

evidence (more than a mere scintilla, but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

Dr. Nielsen testified telephonically:

> ME: Whether this is permanent, whether this is fluctuating as the disease frequently does, I can't comment. I think that the time's come for somebody to reevaluate what is going on in terms of what the pathology is. Certainly, if she's --
>
> ALJ: Well, we've got go on back to Dr. Hemmerling – well, she went to Dr. Hemmerling in February of '02. We're going to get that note. And then she's going to go see Dr. Paugh, . . ., in March and we're going to get that note, so that might help us.
>
> ME: I would think that if we're talking about the degree of disability, she certainly doesn't meet any listings and -- or equals any listings up until the past six weeks as far as I can determine from the chart and from her -- from the testimony I've just heard from her.
>
> ALJ: Well, you'd still need --
>
> ME: Still --
>
> ALJ: -- caloric or other vestibular tests, wouldn't you?
>
> ME: I can't hear you.
>
> ALJ: Wouldn't you still need a caloric or other vestibular tests?
>
> ME: -- don't know what she needs.
>
> ALJ: No, I'm just saying to meet a listing you need that. It has to be documented by caloric or other vestibular tests.
>
> ME: Exactly. I would defer to her -- to an otolaryngologist as to what's going on here and either an otolaryngologist or a neurologist depending on what they find when they reevaluate her. But this seems to have been a significant and definite change six weeks ago which changes the whole appearance of the disease and -- but doesn't change my opinion that she doesn't meet or equal a listing up until that time. And how long this is going to last, whether it's a 12-month thing or not then is

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 6

problematic.
(Tr. at 372-373.)

The listing for labyrinthine-vestibular function, including Meniere's, is found at 20 C.F.R. Pt. 404, Subpt. P, App. 1, 2.07, and is characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing with (A) disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests, and (B) hearing loss established by audiometry. There is no dispute audiometry has demonstrated bilateral hearing loss and loss of speech discrimination. (Tr. at 113, 134.) The question is whether the medical record demonstrates first, "frequent" attacks of balance disturbance and tinnitus, and, second, objective test results required by the "A" factor. It is undisputed the term "frequent" is not defined.

Plaintiff contends that in 2001, she was having dizzy spells with nausea one to two times per month (Tr. at 375); in 2002, she reported some months were better than others, but that attacks would occur between two to four times per month. (Tr. at 376.) The medical record demonstrates Plaintiff reported March 2002 she had had no dizzy spells for the past six weeks. (Tr. at 193.) In May 2002, she reported her dizzy spells were reduced due to medication. (Tr. at 283.) In September 2002, she reported three spells during August. (Tr. at 286.) An ENG test produced results that were consistent with peripheral disorder. (Tr. at 286.) In November 2002, Plaintiff reported the spells had improved again with vestibular rehabilitation -- she had had only two since September 30. (Tr. at 287.) And in February 2003, Plaintiff reported her dizzy spells occurred twice a month and varied from vertigo to mild

disequilibrium lasting 20 minutes. (Tr. at 199.)

On March 6, 2003, Plaintiff consulted otologist Larry Duckert, M.D., at the University of Washington clinic. After a battery of tests, Dr. Duckert concluded Plaintiff did not suffer from Meniere's but her condition was related to an endolymphatic hydrops-like disorder. (Tr. at 232.) Finally, examiner Dr. Paugh reported mild to moderate low-frequency loss of hearing in her right ear with mild loss in her left. Her speech discrimination remained good. (Tr. at 321.)

Medical notes from Dr. Hemmerling dated March 3, 2004, noted an exacerbation of Plaintiff's symptoms. However, an examination revealed no spontaneous nystagmus and tympanic membranes were clear and mobile. Valium was prescribed; Plaintiff was to check back if the exacerbation continued for consideration of an endolymphatic sac decompression. Such a procedure had an 80% chance of significant benefit toward decreasing the vertiginous nausea symptoms. (Tr. at 333.) Thus, there was no evidence the exacerbation would last the requisite 12 consecutive months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Notwithstanding evidence of some periodic attacks of vertigo, it is not necessary to address whether the number of attacks constitutes "frequent" as contemplated by the statute. Plaintiff has failed to show she meets the "A" criteria of the listing: disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests. A caloric test demonstrated only a mild degree of asymmetry. (Tr. at 230.) A work-up by examining experts in otology at the University of Washington resulted in incomplete findings based on "conflicting and difficult diagnostics." (Tr. at

231.) Thus, given the current medical record,[2] the ALJ did not err when he concluded, based on the medical expert's testimony that was consistent with other evidence in the record, Plaintiff's impairment failed to meet the Listings.

2. <u>Failure to Order Psychological Examination</u>

Plaintiff contends the ALJ erred when he did not order a psychological examination in light of treatment for Plaintiff's depression. Plaintiff further argues the ALJ's conclusion that Plaintiff's mental health impairments improved following separation from her "boyfriend"[3] is not supported by the record which indicates Plaintiff continued taking Zoloft. The government responds the ALJ properly concluded Plaintiff's mental impairments were non-severe, based on treating physician Dr. Hemmerling's observation that Plaintiff's anxiety was controlled after her boyfriend left, her depressed mood had improved and her impaired concentration was better.

At step two of the sequential process, the ALJ must conclude whether Plaintiff suffers from a "severe" impairment, one which has more than a slight effect on the claimant's ability to work. To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and

---

[2] It may be that new medical information has come to light that would present a basis for a new claim, given the date of last insured, December 31, 2006.

[3] There is consistent reference throughout the medical record to Plaintiff's status as being married.

laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of pain. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). However, an overly stringent application of the severity requirement violates the statute by denying benefits to claimants who do meet the statutory definition of disabled. *Corrao v. Shalala*, 20 F.3d 943, 949 (9th Cir. 1994). Thus, the Commissioner has passed regulations which guide dismissal of claims at step two. Those regulations state an impairment may be found to be not severe *only* when evidence establishes a "slight abnormality" on an individual's ability to work. *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (citing Social Security Ruling 85-28). The ALJ must consider the combined effect of all of the claimant's impairments on the ability to function, without regard to whether each alone was sufficiently severe. *See* 42 U.S.C. § 423(d)(2)(B) (Supp. III 1991). The step two inquiry is a *de minimis* screening device to dispose of groundless or frivolous claims. *Bowen v. Yuckert*, 482 U.S. 137, 153-154.

On April 29, 2002, Dr. Hemmerling diagnosed depression and prescribed Wellbutrin, based on a two-to-three month history of depressed mood, diminished pleasure in usual activities, weight gain, insomnia, psychomotor agitation, feelings of worthlessness, and impaired concentration. However, he noted Plaintiff was oriented and had normal mood and affect. (Tr. at 169-170.)

Treatment with Wellbutrin continued to September 2002, when Plaintiff reported an improvement in her malaise/fatigue, but registered complaints of fatigue due to obesity and lack of exercise. (Tr. at 291-292.) In October, Plaintiff's medication was changed to Zoloft, which she continued to take through 2002 (Tr. at 296, 299) and into 2003 with an increase in dosage in February 2003, the time of her separation from her partner. (Tr. at 299, 311.) Improvement in all aspects of her depression was charted on March 24, 2003, and the medication dosage was decreased. (Tr. at 313.) No other treatment in the form of counseling or hospitalization was recommended and Plaintiff did not claim disability due to mental impairment. (Tr. at 342.)

An ALJ has no duty to order a psychological evaluation if there is no evidence the claimant suffers from a severe psychological disability. Further psychological evaluation is necessary, only if, in light of the information already before the ALJ, "additional information [is] needed." 20 C.F.R. § 404.1519a(1)(1). Here, although the record substantiates Plaintiff was treated with medication for depression, there is no evidence she suffered from any severe mental health limitation due to that condition or that it resulted in impaired functioning. There was no error.

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 12)** is **DENIED.** If new medical information is revealed that would present a basis for a new claim, claimant may wish to consider filing, given the date of last insured, December 31, 2006, another application.

2. Defendant's Motion for Summary Judgment dismissal **(Ct. Rec. 15)** is **GRANTED**; Plaintiff's Complaint and claims are **DISMISSED**

**WITH PREJUDICE.**

   3.  The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  The file shall be **CLOSED** and judgment entered for Defendant.

   DATED July 22, 2005.


                            S/ CYNTHIA IMBROGNO
                       UNITED STATES MAGISTRATE JUDGE